UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SHIRLEY L. PHELPS-ROPER and<br>MEGAN PHELPS-ROPER,<br><br>    Plaintiffs,<br><br>    vs.<br><br>CITY OF ST. CHARLES, MISSOURI,<br><br>    Defendant. | Case No. 4:11-CV-111 (CEJ) |

## MEMORANDUM AND ORDER

This matter is before the Court on plaintiffs' motion for a preliminary injunction. Defendant City of St. Charles has filed a response in opposition to the motion, and the issues are fully briefed.[1]

### I. Background

Plaintiffs Shirley L. Phelps-Roper and Megan Phelps-Roper are members of the Westboro Baptist Church in Topeka, Kansas. Plaintiffs allege that members of the church believe "that God is punishing America for the sin of homosexuality and other policies that they believe promote sin by killing Americans, including . . . soldiers." They picket near funerals "to publish their religious message that God's promise of love and heaven for those who obey him in this life is counterbalanced by his wrath and hell for those who do not."

On January 18, 2011, the City of St. Charles, Missouri, enacted Ordinance § 131.50, which bans picketing within 300 feet of funerals. Section 131.50 states, in relevant part:

---

[1] Neither side has requested a hearing. Plaintiffs have submitted documentary evidence in the form of affidavits, which the Court has reviewed.

> (A) The City Council of the City of St. Charles, Missouri, finds that families have a legitimate and legally cognizable interest in organizing and attending funerals for deceased relatives and that the rights of families to peacefully and privately mourn the death of relatives are violated when funerals are targeted for picketing or protest activities. The City Council of the City of St. Charles, Missouri, also recognizes that individuals have a constitutional right to free speech and that in the context of funeral ceremonies, the competing interests of picketers and funeral participants must be balanced. Therefore, the City Council declares that the purposes of this Section are to protect the privacy of grieving families and to preserve the peaceful character of cemeteries, mortuaries, churches, and other places of worship during a funeral while still providing picketers and protestors the opportunity to communicate their message at a time and place that minimizes the interference with the rights of families participating in funerals.
>
> (B) For purposes of this Section the following definitions shall apply:
>
> > (1) FUNERAL means the ceremonies and memorial services held in connection with the burial or cremation of the dead but does not include funeral processions on public streets or highways nor does it include the wake (sometimes referred to as a visitation or vigil); and
> >
> > (2) PICKETING OF A FUNERAL means protest activities engaged in by a person or persons located within three hundred feet of the premises of a cemetery, mortuary, church or other place of worship or location during, and which target, a funeral.
>
> (C) A person commits the offense of unlawful picketing of a funeral if he or she engages in picketing of a funeral during the period from one hour prior to the commencement of any funeral through one hour following the cessation of any funeral.
>
> (D) Any person who pickets within the street or road right-of-way shall stay at least three feet from the travelled portion of the street or road.
>
> (E) Any person who violates any of the provisions of this Section is guilty of a misdemeanor . . .

St. Charles, Mo., Code of Ordinances § 131.50 (2011). A violation of the ordinance may result in a fine of no more than $500.00. § 131.50(E). The ordinance took effect immediately upon enactment. Plaintiffs testify by affidavit that, but for the ordinance, they would conduct pickets in the City of St. Charles.

On January 19, 2011, plaintiffs filed suit, pursuant to 28 U.S.C. § 42 U.S.C. § 1983 alleging that § 131.50 impermissibly restricts their rights under the First Amendment and violates Missouri's Religious Freedom Restoration Act, Mo.Rev.Stat. § 1.302. Plaintiffs seek a declaratory judgment, issuance of preliminary and permanent injunctions enjoining enforcement of § 131.50, nominal damages, and an award of attorney's fees and costs. On January 27, 2011, the parties jointly agreed to entry of an order temporarily enjoining enforcement of § 131.50 pending an order on plaintiffs' preliminary injunction motion.

## II. Legal Standard

A court considering a motion for a preliminary injunction must consider (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on the other party; (3) the probability of the movant succeeding on the merits; and (4) the public interest. Phelps-Roper v. Nixon, 545 F.3d 685, 689-90 (8th Cir. 2008) (citing Dataphase Sys. Inc. v. CL Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981) (en banc)). "At base, the question is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." Dataphase, 640 F.2d at 113.

## III. Discussion

Plaintiff Shirley Phelps-Roper has challenged legislation restricting funeral protests as enacted by the states of Ohio, Missouri, Nebraska, and Kansas.[2] In

---

[2] Phelps-Roper v. Taft, 523 F. Supp. 2d 612 (N.D. Ohio 2007) (upholding constitutionality of Ohio's time and geographic limitations on funeral protests), aff'd Phelps-Roper v. Strickland, 539 F.3d 356 (6th Cir. 2008); Phelps-Roper v. Nixon, 504 F. Supp. 2d 691 (W.D. Mo. 2007) (denying preliminary injunction to enjoin Missouri's statutes prohibiting picketing in vicinity of funerals), rev'd Phelps-Roper v. Nixon, 545

addition, she has challenged ordinances enacted by counties and municipalities in Missouri, including St. Charles County, the City of Manchester, and the City of Gladstone.³ Presently pending before the Eighth Circuit are appeals of decisions regarding the constitutionality of the statutes of Missouri and Nebraska and the ordinance of the City of Manchester. For the present, the principles governing the issues raised by this case are set out in Phelps-Roper v. Nixon, 545 F.3d 685 (8th Cir. 2008) (reversing district court's denial of plaintiff's motion to enjoin enforcement of Missouri's ban on funeral pickets).

The City of St. Charles seeks to impose limitations on peaceful picketing, an expressive activity protected by the First Amendment. Id. at 690 (citing Olmer v. Lincoln, 192 F.3d 1176, 1179 (8th Cir. 1999)). In a First Amendment case, often the determining factor in whether a preliminary injunction should issue is the likelihood of success on the merits. Id. (citing McQueary v. Stumbo, 453 F. Supp. 2d 975, 979 (E.D. Ky. 2006)). With respect to the remaining Dataphase factors, the Eighth Circuit explained in Phelps-Roper v. Nixon: "A loss of First Amendment freedoms, for even

---

F.3d 685 (8th Cir. 2008); and Phelps-Roper v. Koster, 734 F. Supp. 2d 870 (W.D. Mo. 2010) (on remand, finding statutes violate First Amendment); Phelps-Roper v. Heineman, 720 F. Supp. 2d 1090 (D. Neb. 2010) (denying preliminary injunction to enjoin Nebraska statute prohibiting picketing in vicinity of funerals); Phelps v. Hamilton, 840 F. Supp. 1442 (D. Kan. 1993) (finding in part that plaintiff had standing to challenge Kansas Funeral Picketing Act) (aff'd in part and rev'd in part, 122 F.3d 1309 (10th Cir. 1997). See also McQueary v. Stumbo, 453 F. Supp. 2d 97 (E.D. Ky. 2006) (granting preliminary injunction to another member of Westboro Baptist Church to enjoin enforcement of Kentucky funeral-protest ban).

³Phelps-Roper v. County of St. Charles, 4:10CV2232 AGF, 2011 WL 227561 (E.D. Mo. Jan. 24, 2011) (order granting plaintiff's motion for preliminary injunction); Phelps-Roper v. City of Manchester, Missouri, --- F. Supp. 2d ---, 2010 WL 3614182 (E.D. Mo. 2009) (granting summary judgment to plaintiffs on claim that city ordinance violated First Amendment); Phelps-Roper v. City of Gladstone, Missouri, 4:09CV121 FJG, 2009 WL 995565 (Apr. 14, 2009) (entering preliminary injunction enjoining enforcement of city ordinance).

minimal periods of time, unquestionably constitutes irreparable harm;" and "it is always in the public interest to protect constitutional rights;" and finally, "[t]he balance of equities . . . generally favors the constitutionally protected freedom of expression." Id.

Where a preliminary injunction is sought to enjoin something other than government action, district courts are to apply "the fair chance of prevailing" standard. Id. However, where a party seeks to enjoin enforcement of a duly enacted state statute, the court must make a threshold finding that the party is <u>likely</u> to prevail on the merits. Id. (quoting <u>Planned Parenthood, Minn., So. Dakota, No. Dakota v. Rounds</u>, 530 F.3d 724, 732-33 (8th Cir. 2008)) (emphasis in original). Which of the two standards applies to a municipal ordinance depends upon the extent to which the challenged government action "represents the full play of the democratic process" and thus deserves greater deference. <u>Rounds</u>, 530 F.3d at 732 n.6 (quoting <u>Able v. United States</u>, 44 F.3d 128, 131-32 (2d Cir. 1995)); <u>Bergmann v. City of St. Elmo</u>, No. 10CV2074 (JNE/FLN), 2010 WL 4123355 *5 (D. Minn. Aug. 19, 2010) (applying "likely to prevail" test where record established city hired consultant to obtain citizen feedback, and city council discussed ordinance at public hearing before enacting). The present record contains no evidence regarding the process by which the City of St. Charles passed the challenged ordinance. However, for the purposes of this motion, the Court will assume that plaintiffs must satisfy the more stringent standard that they are likely to prevail on the merits of their First Amendment claim. See <u>Phelps-Roper v. City of Gladstone</u>, No. 09CV121 FJG, 2009 WL 995565 *2 n.1 (W.D. Mo. Apr. 14, 2009) (noting that plaintiff established likelihood of success under either standard).

"The First Amendment generally prevents government from proscribing speech, or even expressive conduct, because of disapproval of the ideas expressed." R.A.V. v. City of St. Paul, Minn., 505 U.S. 377, 382 (1992) (citations omitted). Content-based regulations are presumptively invalid. Id. The discussion in Nixon makes it plain that the ordinance here is content-neutral. 545 F.3d at 690-91 (rejecting plaintiff's claim that statute was content based because it was enacted to silence her speech in particular; the plain meaning of the text controls). Where a statute or ordinance is content-neutral, it is subject to intermediate judicial scrutiny. Id. at 690 (citing Turner Broad. Syst., Inc. v. FCC, 512 U.S. 622, 642 (1994)). A content-neutral time, place and manner regulation may be imposed in a public forum if it (1) serves a significant government interest, (2) is narrowly tailored, and (3) leaves open ample alternative channels for communication. Id. at 691.

Defendant argues that the ordinance serves two significant interests: first, preserving the sanctity and dignity of memorial and funeral services, and second, protecting the privacy of a family burying a family member. Plaintiffs contend that, under Nixon, these interests are not sufficient to outweigh the protections of the First Amendment.

Plaintiffs are correct. In Nixon, the Eighth Circuit considered and rejected a similar argument when proffered by the State of Missouri in support of its funeral picketing statute. Id. at 691-92. The Court of Appeals relied on Olmer v. Lincoln, 192 F.3d 1176, 1178 (8th Cir. 1999), which addressed an ordinance passed by the City of Lincoln, Nebraska. The Lincoln ordinance restricted picketing outside churches in the thirty minutes before, during, and thirty minutes after scheduled services. Id. Noting that the Supreme Court had upheld bans on "focused picketing" outside residences,

the City of Lincoln argued that it had a legitimate interest in protecting persons attending religious services. Id. at 1181-82 (citing Frisby v. Schultz, 487 U.S. 474 (1988)). The Eighth Circuit disagreed:

> We cannot agree with the City that churches are indistinguishable from private residences for this purpose. As the Supreme Court said in Frisby, "the home is different," and, in our view, unique. Allowing other locations, even churches, to claim the same level of constitutionally protected privacy would, we think, permit government to prohibit too much speech and other communication. We recognize that lines have to be drawn, and we choose to draw the line in such a way as to give the maximum possible protection to speech, which is protected by the express words of the Constitution.

Id. at 1182. Based on this passage from Olmer, the Eighth Circuit concluded in Nixon that plaintiff was likely to prove that her First Amendment rights outweighed any government interest in protecting mourners.

District courts faced with similar legislative attempts to restrict pickets have found themselves bound by Nixon. St. Charles County, 2011 WL 227561 at *3 (county's distinction between protecting "mourners" and grieving family members not sufficient to avoid Nixon); Manchester, 2010 WL 3614182 at *9 ([T]he Eighth Circuit has unequivocally refused to recognize the government's significant interest in protecting unwilling listeners outside the residential context."); Gladstone, 2009 WL 995565 at *3 (court bound by Nixon); but see Heineman, 720 F. Supp. 2d at 1100-04 (finding legitimate government interest in Nebraska statute narrowly focused on protecting privacy of grieving families who are "captive audience" at funeral and have personal stake in honoring their dead). Given the holding of Nixon, the Court finds that plaintiff is likely to prevail on her argument that Ordinance § 131.50 does not further a legitimate government interest.

Plaintiffs additionally assert that Ordinance § 131.50 fails to satisfy the remaining two requirements of being narrowly tailored and permitting ample alternatives for expression. Because the Court finds that the ordinance does not protect a legitimate government interest, the remaining factors require only limited discussion. The 300-foot buffer zone established by Ordinance § 131.50 has been rejected as excessive in the context of funeral protests. See Manchester, 2010 WL 3614182 at *11; St. Charles County, 2011 WL 227561 at *3-4; McQueary v. Stumbo, 453 F. Supp. 2d 975, 995-96 (E.D. Ky. 2006). Defendant presents no compelling argument why this ordinance merits a different outcome. With respect to the requirement that the restrictions on picketing leave open ample alternative channels for communicating plaintiffs' message, the Eighth Circuit has held that these plaintiffs "present[] a viable argument that those who protest or picket at or near a military funeral wish to reach a audience that can only be addressed at such an occasion and to convey to and through such an audience a particular message." Nixon, 545 F.3d at 694.

Based on the Nixon, Gladstone, Manchester, and St. Charles County decisions, the Court finds that plaintiffs have demonstrated a likelihood of success on the merits of their claim that Ordinance § 131.50 impermissibly restricts their rights under the First Amendment. Accordingly, plaintiffs have established that they will suffer irreparable injury if a preliminary injunction is not issued. The injunction will not cause substantial harm to others and the public is served by the preservation of constitutional rights. Nixon, 545 F.3d at 694. Thus, the balance of harms requires the issuance of the requested preliminary injunction. Because the Court will enjoin enforcement of § 131.50 on First Amendment grounds, it is unnecessary to address the parties'

arguments regarding the Missouri Religious Freedom Restoration Act. Defendant has not argued that any security is necessary to protect its interest in the event it is determined to have been wrongfully enjoined, and the Court will not require plaintiffs to provide a bond.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' motion for a preliminary injunction to enjoin enforcement of the City of St. Charles, Missouri Code of Ordinances § 131.50 [Doc. #11] is **granted**.

**IT IS FURTHER ORDERED** that defendant City of St. Charles, Missouri, its agents, servants, employees, and attorneys, and any persons acting in concert with defendant, are enjoined from enforcing the City of St. Charles, Missouri Code of Ordinances § 131.50 during the pendency of this action in this Court.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 24th day of February, 2011.